UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GROVE WAY INVESTMENTS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE MANAGEMENT COMPANY, LLC, a Wisconsin limited liability company, and DOES 1 through 20, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | No.  2:19-cv-0696-JAM-EFB<br><br>ORDER AFTER HEARING |

This case was before the court on May 27, 2020, for hearing on plaintiff Grove Way Investments, LLC's ("Grove Way") motion to compel defendant Centene Management Company, LLC ("Centene") to produce documents withheld based on an assertion of the attorney-client privilege (ECF No. 15) and Centene's motion to exclude plaintiff's expert witness (ECF No. 20).

/////

/////

/////

1

Attorney Katherine Wegner appeared on behalf of Grove Way; attorneys Erinn Contreras and Daniel Maroon appeared on behalf of Centene.[1] At the hearing, Centene was ordered to submit a declaration in support of its contention that the six documents it withheld were protected by the attorney-client privilege. That declaration has been submitted. ECF No. 36. For the reasons stated on the record, Centene's motion to exclude Grove Way's expert witness (ECF No. 20) is denied. Further, for the reasons stated on the record, and as briefly described below, Grove Way's motion to compel defendant to produce documents is denied.

I.      Background

The complaint alleges that Grove Way is the successor-in-interest to RF3 International Drive, LLC ("RF3"). Compl. (ECF No. 1 at 9-75) ¶ 1. In January 2017, RF3 and Centene entered into a single-tenant lease agreement for an office building (the "property") located in Rancho Cordova, California. *Id.* ¶ 10. The lease agreement included a Construction Rider, which requires Centene to bear the cost of all "Tenant Improvements" to the property. ECF No. 1 at 48. However, the Construction Rider also provided that Centene was entitled to a one-time payment for completing certain tenant improvements. The Construction Rider refers to the approved payment for specific tenant improvements as "Allowances." To obtain a disbursement, Centene was required to a request for "disbursement of the Allowances." *Id.* Alternatively, Centene could elect to apply "a unused portion of the Allowances of up to [$5.00] per rentable square foot of the building . . . against [its] Rent obligations under the Lease." *Id.* Under the Construction Rider, Centene was required to make the election or request disbursement by December 31, 2017. *Id.* If it failed to do so, any unused portion of the Allowances was forfeited to the Landlord. *Id.*

In June 2017, Grove Way purchased the property, and RF3 assigned to Grove Way all its rights under defendant's lease. *Id.* ¶ 11. In October 2017, Grove Way and Centene executed an amendment to the lease that extended the December 31, 2017 deadlines to June 30, 2018. *Id.* ¶ 13. Grove Way alleges that Centene did not complete the Tenant Improvements by that date, nor did it submit a request for disbursement. *Id.* ¶ 14. Instead, Centene allegedly submitted an

---

[1] Counsel for both parties appeared telephonically.

1    untimely request for disbursement in February 2019.  *Id.* ¶ 17.  Grove Way also claims that

2    Centene made numerous tenant improvements that were not permitted under the terms of the

3    lease.  It further alleges that Centene failed to timely pay its rent.  *Id.* 16.  The complaint alleges a

4    claim for breach of contract and seeks declaratory judgment finding Grove Way is not obligated

5    to make a disbursement under the lease.  *Id.* at 12-14.

6        In February 2020, Grove Way served its first set of Requests for Production of Documents

7    on Centene.  ECF No. 30 at 4.  Centene served objections and responses to the request for

8    production.  *Id.*  The parties subsequently met and conferred regarding Centene's objections, but

9    they continue to disagree as to whether Centene has improperly withheld six documents it

10   contends are protected by the attorney-client privilege.  Accordingly, Grove Way now moves to

11   compel the production of those documents.[2]

12   II.    Discussion

13       In a diversity action, such as this case, the attorney-client privilege is governed by state

14   law.  Fed. R. Evid. 201.  Under California law, the attorney-client privilege, set forth at California

15   Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent

16   another from disclosing, a confidential communication between client and lawyer . . . ."  Cal.

17   Evid. Code. § 954.  A confidential communication between client and lawyer is defined as

18   "information transmitted between a client and his or her lawyer in the course of that relationship

19   and in confidence by a means which, so far as the client is aware, discloses the information to no

20   third persons other than those who are present to further the interest of the client in the

21   consultation or those to whom disclosure is reasonably necessary for the transmission of the

22   information or the accomplishment of the purpose for which the lawyer is consulted, and includes

23   a legal opinion formed and the advice given by the lawyer in the course of that relationship."  Cal.

24   Evid. Code § 952; *see Ins. Co. of N. Am. v. Super. Ct.*, 108 Cal. App. 3d 758, 765 (1980) ("While

25   involvement of an unnecessary third person in attorney-client communication destroys

---

[2] Grove Way's motion also sought to compel the production of documents other responsive documents that Centene has since produced.  Thus, the parties' dispute is limited to the six documents Grove Way contends are privileged.

1    confidentiality, involvement of third persons to whom disclosure is reasonably necessary to
2    further the purpose of the legal consultation preserves confidentiality of communication.").
3    "Thus, for example, the [attorney-client] privilege extends to communications which are intended
4    to be confidential, if they are made to attorneys, to family members, business associates, or agents
5    of the party or his attorneys on matters of joint concern, when disclosure of the communication is
6    reasonably necessary to further the interest of the litigant." *OXY Res. Cal. LLC v. Super. Ct*., 115
7    Cal. App. 4th 874, 890 (2004) (internal quotation marks omitted).
8         "The party claiming the privilege has the burden of establishing the preliminary facts
9    necessary to support its exercise, i.e., a communication made in the course of an attorney-client
10   relationship." *Costco Wholesale Corp. v. Super. Ct*., 47 Cal. 4th 725, 733 (2009) (citations
11   omitted). "[T]o determine whether a communication is privileged, the focus of the inquiry is the
12   dominant purpose of the relationship between the parties to the communication. Under that
13   approach, when the party claiming the privilege shows the dominant purpose of the relationship
14   between the parties to the communication was one of attorney-client, the communication is
15   protected by the privilege." *Clark v. Superior Court*, 196 Cal. App. 4th 37, 51 (2011) (citing
16   *Costco*, 47 Cal. 4th 725). "Once that party establishes facts necessary to support a prima facie
17   claim of privilege, the communication is presumed to have been made in confidence and the
18   opponent of the claim of privilege has the burden of proof to establish the communication was not
19   confidential or that the privilege does not for other reasons apply." *Id*.
20        Centene argues that the disputed documents contain communication between its in-house
21   counsel, Katharine Jones; two of its Directors who act and make decisions on behalf of Centene;
22   Barbara Ottolina and Michael Bohm; and Centene's real estate brock, Scott Bozoian, who is the
23   Executive Managing Director of Cushman. ECF No. 30-3 at 4. Centene explains that it has a
24   written contract with Cushman whereby Cushman acts as Centene's real estate broker for all of its
25   real estate transactions, including leases. It further claims that Cushman acted as Centene's real
26   estate broker with respect to negotiating the lease underlying this case, and consulted with
27   Centene's in-house counsel order to facilitate the provision of legal advice to Centene with
28   respect to the negotiation of the Lease. *Id*. It further claims that Ottolina and Bohm were also

4

included in those confidential communications because that they were the business people who would ultimately have to approve the Lease and/or any exhibits involving construction of tenant improvements. Centene also contends that Cushman's main role as Centene's real estate broker is to serve as the liaison between Centene, as a tenant, and Centene's landlords or potential landlords in negotiating and revising lease agreements. Significantly, the declaration Centene submitted states that the withheld emails contain "comments and suggested revisions to a draft lease as well as revised draft of the lease containing Centene's in-house counsel's redlines revisions and comments." Decl. of Erinn M. Contreras ¶ 2.

Centene's representations show that the dominate purpose of the emails was to obtain and share legal advice from counsel concerning the terms of the lease. Furthermore, Cushman would not be able to serve as an effect liaison for the negotiations if it was shielded from counsel's legal advice concerning the lease and its terms. *See Amtel Corp. v. St. Paul Fire & Marine Ins. Co.*, 409 F. Supp. 2d 1180, 1182 (N.D. Cal. 2005) (holding that disclosure of privileged communication to client's insurance broker did not waive the privilege because broker "served as a conduit of information between [corporate client] and the insurers."). Accordingly, Centene has satisfied its burden of establishing the preliminary facts necessary to support its assertion of the privilege.

III. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to compel defendant to produce documents (ECF No. 15) is denied; and

2. Defendant's motion to exclude plaintiff's expert witness (ECF No. 20) is denied.

DATED: August 6, 2020.

_[signature]_
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE