1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   GROVE WAY INVESTMENTS, LLC,        No.  2:19-cv-00696-JAM-JDP

12              Plaintiff,

13        v.                            **ORDER GRANTING IN PART AND
                                        DENYING IN PART PLAINTIFF'S**
14   CENTENE MANAGEMENT COMPANY,        **MOTION FOR PARTIAL SUMMARY
     LLC,                               JUDGMENT AND DENYING DEFENDANT'S**
15                                      **MOTION FOR SUMMARY JUDGMENT**
              Defendant.
16

17

18        Grove Way Investments, LLC ("Grove Way" or "Plaintiff")

19   filed suit against its tenant, Centene Management Company, LLC

20   ("Centene" or "Defendant") for declaratory relief and breach of

21   contract.  See Compl., ECF No. 1.  Centene filed counterclaims

22   against Grove Way for breach of contract, breach of the covenant

23   of good faith and fair dealing, breach of the implied duty to

24   perform with reasonable care, quantum meruit/unjust enrichment,

25   declaratory relief and accounting.  See Answer and Countercl.

26   ¶¶ 22-59, ECF No. 5.  The parties filed cross-motions for partial

27   summary judgment.  See Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF

28   No. 51; Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 56.  Each

                                    1

side has opposed the other and replied.  See Pl.'s Opp'n, ECF No. 62; Def.'s Mot.; Def.'s Reply, ECF No. 67.

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment and DENIES Defendant's motion for partial summary judgment.[1]

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On or around January 24, 2017, RF3 International Drive, LLC ("RF3") and Centene entered into a Single Tenant Office Lease Agreement ("Original Lease") for an office building in Rancho Cordova ("the Property").  Pl.'s Resp. to Def.'s Undisputed Facts ("Def.'s SUF") No. 1, ECF No. 62.  In addition to the original lease, a Construction Rider provided that if certain conditions were met, the tenant, Centene, would be provided a one-time payment of up to $1,857,210.80 ("the Allowances"), reimbursing them for the costs of improvements made to the property.  Def.'s Resp. to Pl.'s Undisputed Facts ("Pl.'s SUF") No. 6-7, ECF No. 56; Def.'s SUF No. 2-3.

On June 23, 2017, Grove Way purchased the property and RF3 assigned to Grove Way all of its rights and obligations under the original lease, including the obligation to pay the allowances. Pl.'s SUF No. 1-2; Def.'s SUF No. 13, 15.  In October, 2017, Grove Way and Centene amended the lease which among other things, revised Section 2.2 of the Construction Rider, extending the

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for September 29, 2020.

1 | deadline Centene was required to "submit a request for

2 | application or disbursement of the entire Allowances, or of its

3 | election to apply up to $5 per square foot against Rent" from

4 | December 31, 2017 to June 30, 2018.  Pl.'s SUF No. 4; Def.'s SUF

5 | No. 18.

6 | On January 25, 2018 Grove Way approved Centene's construction

7 | plans, conditioned on Centene reimbursing Grove Way for the cost

8 | of review, paying an additional oversight fee equal to 1% of the

9 | total construction costs and paying to replace a security system

10 | that had been removed during demolition.  Pl.'s SUF No. 19;

11 | Def.'s SUF No. 23-26.  Centene agreed to the conditions shortly

12 | thereafter.  Pl.'s SUF No. 19; Def.'s SUF No. 27.

13 | On April 5, 2018, Centene provided Grove Way with revised

14 | tenant plans reflecting the removal of the kitchen, gym, related

15 | bathrooms and generator.  Pl.'s SUF No. 25-26; Def.'s SUF No. 28.

16 | On June 30, 2018, Grove Way sent an approval of the updated plans

17 | that was conditioned on Centene paying for a security system, an

18 | upgraded temperature control system and additional smoke

19 | detectors.  Pl.'s SUF No. 34-35; Def.'s SUF No. 29-30, 41, 46.

20 | Centene paid to have the temperature control system upgraded but

21 | was not agreeable to paying for the security system, as Centene

22 | contends it was substantially more expensive than the one that

23 | had been removed and that it had previously agreed to pay for in

24 | January.  Def.'s SUF No. 30, 33, 45.  The fire detectors were not

25 | installed as set forth in the conditions for reasons which are

26 | disputed.  See Def.'s SUF No. 45-56.

27 | On June 22, 2018 Centene submitted to Grove Way a written

28 | request for application of the entire allowances but acknowledged

1   that disbursement would not be made until it had satisfied all

2   the conditions laid out in Section 2.4 of the Construction Rider.

3   Pl.'s SUF No. 32; Def.'s SUF No. 64.  On February 7, 2019 Centene

4   submitted a letter entitled "Disbursement of Allowances" to Grove

5   Way, as well as a binder of materials, purportedly to comply with

6   Section 2.4.  Def.'s SUF No. 66-67.  The parties dispute whether

7   the items sent met all of the conditions.  See Pl.'s Mot. at 16-

8   19; Def.'s Mot. at 18-29.  In total Centene paid over three

9   million dollars to improve the premise.  See Def.'s SUF No. 79-

10  80.  Grove Way has not paid Centene any portion of the

11  allowances.  Def.'s SUF No. 92.  Grove Way invoiced Centene for

12  the security system, which Centene did not pay.  See Pl.'s SUF

13  No. 50D.

14    Grove Way then brought this action against Centene in

15  Sacramento Superior Court for declaratory relief and breach of

16  contract.  See generally Compl.  Centene removed the case to

17  federal court based on diversity jurisdiction.  Notice of Removal

18  at 1, ECF No. 1.  Centene brought counterclaims against Grove Way

19  for breach of contract, breach of the covenant of good faith and

20  fair dealing, breach of the implied duty to perform with

21  reasonable care, quantum meruit/unjust enrichment, declaratory

22  relief and accounting.  See generally Def.'s Answer and

23  Countercl.  Grove Way moved for partial summary judgment on

24  Centene's breach of contract, breach of the covenant of good

25  faith and fair dealing, quantum meruit/unjust enrichment and

26  accounting counterclaims.  See generally Pl.'s Mot.  Centene

27  filed a cross motion for partial summary judgment on its breach

28  of contract, quantum meruit/unjust enrichment and declaratory

4

1  relief counterclaims, as well as Grove Way's first cause of

2  action for declaratory relief.  See generally Def.'s Mot.

3

4                      II.   OPINION

5      A.   Evidentiary Objections

6      Plaintiff and Defendant raise several evidentiary

7  objections.  See Pl.'s Obj., ECF No. 63, 70; Def.'s Obj., ECF

8  No. 62.  The Court has reviewed these evidentiary objections but

9  declines to rule on each one individually as courts self-police

10 evidentiary issues on motions for summary judgment and a formal

11 ruling is unnecessary to the determination of this motion.  See

12 Burch v. Regents of the University of California, 433 F.Supp.2d

13 1110, 1118-1122 (E.D. Cal. 2006) (objections challenging the

14 characterization of the evidence are improper on a motion for

15 summary judgment).

16     B.   Legal Standard

17     A Court must grant a party's motion for summary judgment

18 "if the movant shows that there is no genuine dispute as to any

19 material fact and the movant is entitled to a judgment as a

20 matter of law."  Fed. R. Civ. Proc. 56(a).  The movant bears the

21 initial burden of "informing the district court of the basis for

22 its motion, and identifying [the documents] which it believes

23 demonstrate the absence of a genuine issue of a material fact."

24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is

25 material if it "might affect the outcome of the suit under the

26 governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

27 248 (1986).  Once the movant makes this initial showing, the

28 burden rests upon the nonmoving party to "set forth specific

5

1    facts showing that there is a genuine issue for trial."  Id.  An

2    issue of fact is genuine if "the evidence is such that a

3    reasonable jury could return a verdict for the nonmoving party."

4    Id.

5         C.   Analysis

6              1.   Breach of Contract

7         In order to prevail on its breach of contract claim Centene

8    must prove: (1) the existence of a contract, (2) Centene's

9    performance of the contract or excuse for nonperformance, (3)

10   Grove Way's breach, and (4) resulting damages.  See Richman v.

11   Hartley, 169 Cal. Rptr. 3d 475, 478 (Ct. App. 2014).

12        Both parties have sought summary judgment on Centene's

13   first counterclaim for breach of contract.  See Pl.'s Mot. at

14   15; Def.'s Mot. at 18.  The existence of a contract is not

15   contended.  See Pl.'s Mot. at 15-19; Def.'s Mot. at 18-30.  In

16   dispute, however, is whether Centene has satisfied all

17   conditions, triggering Grove Way's obligation to pay the

18   allowances.  See Pl.'s Mot. at 16-19; Def.'s Mot. at 18-30.

19   Centene claims that all conditions have been met or excused,

20   such that Grove Way breached by failing to pay the allowances.

21   See Def.'s Mot. at 18-30; see also Def.'s Answer and Countercl.

22   at 10-11.  Grove Way on the other hand, contends it was not

23   obligated to pay, as not all the required conditions have been

24   met.  See Pl.'s Mot. at 16-19.

25        A. *Section 2.2 and the June 30, 2018 Deadline*

26        The first contention is over the interpretation of Section

27   2.2 of the Construction Rider.  The pertinent portion states:

28

1
2
3
4
5

        If Tenant does not submit a request for application or disbursement of the entire Allowances, or of its election to apply up to $5 per square foot against Rent, as described in the preceding sentences, in accordance with this Section 2.2 by June 30, 2018, any unused portion of the Allowances shall be forfeited and shall accrue for the sole benefit of Landlord.

6       The language of a contract is to govern its interpretation,

7   if the language is clear and explicit, and does not involve an

8   absurdity.  Cal. Civ. Code § 1638.  When a contract is reduced

9   to a writing, the intention of the parties is to be ascertained

10  from the writing alone if possible.  Id. at § 1639.  However,

11  under California law, extrinsic evidence is admissible if it is

12  relevant to prove a meaning to which the language is reasonably

13  susceptible.  Pac. Gas & Elec. Co. v. G.W. Thomas Drayage &

14  Rigging Co., 442 P.2d 641, 644 (Cal. 1968).

15      Grove Way argues that under 2.2, Centene was required to

16  both complete construction of the improvements and submit all

17  the necessary paperwork required of Section 2.4 to Grove Way by

18  June 30, 2018 in order to receive the allowances.  Pl.'s Mot. at

19  2.  Grove Way argues that the language in Section 2.2 referring

20  to tenant's "request for application" refers to tenant's request

21  to apply the $5.00 per rentable square foot credit to its rent,

22  not a request for the improvement allowances.  Pl.'s Opp'n at

23  12.  Centene on the other hand, argues it was only required to

24  submit a request for application of the allowances to Grove Way

25  by the June 30, 2018 deadline, which it met when it submitted a

26  written request for application before such date.  Def.'s Mot.

27  at 19.  Centene contends Section 2.2 did not require it to

28  complete construction or all the conditions of 2.4 by then in

1 order to receive the allowance.  Id.

2     The plain reading of the contract supports Centene's

3 position.  The Court reads the statement "request for

4 application or disbursement of the entire Allowances" to mean

5 that Centene was able to meet this requirement by notifying

6 Grove Way of its intent to use the full allowances by the

7 deadline.  The explicit terms do not mention meeting all the

8 conditions set forth in 2.4 or completing construction by the

9 June 30, 2018 date.  However, under California law, the test of

10 whether parol evidence is admissible to construe an ambiguity is

11 not whether the language appears to the court to be unambiguous,

12 but whether the evidence presented is relevant to prove a

13 meaning to which the language is reasonably susceptible.  Winet

14 v. Price, 6 Cal. Rptr. 2d 554, 557 (Ct. App. 1992).  Grove Way

15 has introduced numerous exhibits it contends show that its

16 interpretation was the true intent of the parties.  See Pl.'s

17 Opp'n 2-4.  The Court has considered these but finds they are

18 not relevant to prove a meaning to which the language is

19 reasonably susceptible, as they are also consistent with the

20 plain language meaning.  See Def.'s Mot. at 5 (noting the

21 evidence is consistent with Centene wanting to spend the entire

22 allowance by the deadline so no portion would be unused and in

23 order to submit the request in good faith).  Even if the

24 contract was reasonably susceptible to Grove Way's

25 interpretation, that Centene had to complete construction and

26 the conditions of 2.4 by the deadline, Centene would still have

27 not forfeited their right to allowances.  Section 2.2

28 specifically states that if the tenant did not submit a request

8

1   for application or disbursement by the deadline, "any unused

2   portion of the Allowances" would be forfeited.  See Pl.'s SUF

3   No. 6; Def.'s SUF No. 2 (emphasis added).  By the time the

4   deadline passed, Centene had already completed tenant

5   improvements in excess of the allowance.  Def.'s SUF No. 65.  As

6   such, no portion of the allowance was unused and forfeited.

7        B. *Landlord Approval*

8        Grove Way also argues that under Section 6.0 of the Lease

9   and Section 3.2 and 3.4 of the Construction Rider, Centene was

10  required to obtain Grove Way's approval of the improvements,

11  which it did not.  Pl.'s Mot. at 18.  But as Centene notes, this

12  was not one of the condition precedents laid out in Section 2.4

13  to receiving disbursement of the allowance.  See Def.'s Mot. at

14  26; Pl.'s SUF No. 7; Def.'s SUF No. 4.  In order then, to excuse

15  Grove Way's performance this would have to constitute a material

16  breach.  See Brown v. Grimes, 192 Cal. App. 4th 265, 277

17  (2011)("When a party's failure to perform a contractual

18  obligation constitutes a material breach of the contract, the

19  other party may be discharged from its duty to perform under the

20  contract).  At this point the Court cannot find as a matter of

21  law that this does or does not constitute a material breach as

22  there are too many genuine disputes of material fact.  See Pl.'s

23  Mot. at 18-19; Def.'s Mot. 26-29. As such, neither party is

24  entitled to summary judgment.

25       C. *Conditions of 2.4*

26       Additionally, Grove Way argues that Centene failed to meet

27  several of the conditions to disbursement required of Section

28  2.4 of the Construction Rider.  That provision states:

1

2          2.4 Conditions to Disbursement. No disbursement of the
        Allowances shall be made unless and until Tenant shall have
3       performed and/or submitted to Landlord all of the
        following:
4               (a) A factually accurate Commencement Date Memorandum
        pursuant to Section 2.4 of the Lease demonstrating that the
5       Rent Commencement Date shall have occurred;
                (b) Certificates of insurance showing that the
6       insurance required of Tenant under Section 11.1 of the
        Lease is in place and fully effective;
7               (c) Request for Taxpayer Identification Number and
        Certification (IRS Form W-9) signed and dated by Tenant;
8               (d) An unconditional lien waiver and release from each
        construction contractor and subcontractor covering the full
9       amount of the Tenant Improvements;
                (e) Copies of all licenses, permits and approvals
10      required for the Tenant Improvements;
                (f) Original paid invoices for the work performed;
11              (g) Tenant has delivered to Landlord "as built" plans
        for the Tenant Improvements
12              (h) Tenant's architect certifies to Landlord that the
        Tenant Improvements comply with all Laws, all Permits (as
13      defined below) and the Final Plans (as defined below);
14              (i) Certificate of Occupancy (or its equivalent) have
        been issued for the Premises; and
15              (j) No mechanic's liens have been recorded against the
        Premises or any portion thereof.
16

17

18      Grove Way first claims Centene failed to meet condition

19      2.4(e) because Centene did not submit approvals from the

20      landlord.  Pl.'s Mot. at 17-18.  Centene argues that it was not

21      required to do so as "approvals" in 2.4(e) refers to approvals

22      by the relevant governing authorities, not landlord approvals.

23      Def.'s Mot at 24-25.  The Court agrees with Centene.  As Centene

24      points out, Grove Way is the landlord.  It would make little

25      sense for the provision to require the tenant to submit the

26      landlord's own approvals back to the landlord.  Id.; see County

27      of Marin v. Assessment Appeals Bd.,134, Cal. Rptr. 349, 352 (Ct.

28      App. 1976)("The court shall avoid an interpretation which will

1   make a contract extraordinary, harsh, unjust, inequitable or

2   which would result in absurdity.")  Because Centene sent copies

3   of all licenses, permits and approvals from the relevant

4   authorities, the Court finds Centene has met this condition.

5   Def.'s SUF No. 72.

6        Grove Way also contends that Centene did not satisfy 2.4(g)

7   because although Grove Way received the "as built" plans they

8   were in electronic rather than hard copy form.  Pl.'s Mot. at

9   18.  Grove Way points out that under Section 22.1 of the lease

10  "any notice, demand, or request, consent or approval that either

11  party desires or is required to give the other Party under this

12  Lease shall be in writing."  Id.  While Centene sent its

13  February 7, 2019 request for disbursement in writing and in full

14  compliance with 22.1, as well as a disbursement binder, it did

15  not include hard copies of the voluminous as built plans.  Pl.'s

16  SUF No. 43; Def.'s SUF No. 74.  Instead, Centene sent these

17  records electronically.  Id.  The Court finds Centene satisfied

18  this condition.  The as built plans were not required to be

19  delivered in hard copy under 22.1 as they are not a notice,

20  demand, request, consent or approval.  Centene complied with

21  22.1 by mailing a written request for disbursement and satisfied

22  2.4(g) when it sent Grove Way, electronically, a copy of the as

23  built plans.  Id.

24       The parties also dispute whether 2.4(h) has been satisfied.

25  Grove Way argues that the tenant's architect didn't certify the

26  tenant improvements complied with the final plans approved by

27  Grove Way.  Pl.'s Opp'n at 8.  Centene contends this condition

28  was excused because Grove Way unreasonably withheld and delayed

11

1   its approval in violation of Section 6.1 of the Lease.[2]  See

2   Jacobs v. Tenneco W., Inc., 231 Cal. Rptr. 351, 353 (Ct. App.

3   1986) ("Where a party's breach by non-performance contributes

4   materially to the non-occurrence of a condition of one of his

5   duties, the non-occurrence is excused.")  Under Section 6.1

6   Grove Way was only able to withhold its consent if the Tenant

7   Improvements would adversely affect the structure or safety of

8   the Building, otherwise, the Lease provided that Grove Way would

9   not unreasonably withhold or delay its consent to the proposed

10  alterations.  Pl.'s SUF No. 10; Def.'s SUF No. 19.  Grove Way

11  conditioned its June 30, 2018 approval on having additional

12  smoke detectors installed.  Pl.'s SUF No. 34-25; Def.'s SUF No.

13  46.  Because there is a genuine dispute as to whether these

14  smoke detectors affected the safety of the building, the Court

15  cannot determine as a matter of law whether or not Grove Way's

16  withholding of approval was reasonable.  Def.'s SUF No. 47-57.

17  Also relevant is the parties' dispute over whose fault it was

18  that the smoke detectors were not installed.  Def.'s SUF No. 53.

19  Centene claims Grove Way is at fault for not signing the

20  proposal or sending the necessary letter to the Fire Department.

21  See id.  Grove Way, on the other hand, contends it did not

22  ────────────────

23  [2] Grove Way claims this argument is barred by Section 29.1 of the
    Lease which states: "[i]f it is determined that Landlord failed
    to give consent where it was required to do so under this Lease,

24  Tenant shall be entitled to injunctive relief but shall not be
    entitled to monetary damages." Pl.'s Mot. at 19.  But Centene is

25  not seeking monetary relief based on Grove Way's failure to give
    consent. See Def.'s Mot. at 26-29.  Instead, Centene is seeking

26  monetary relief based on Grove Way's failure to pay the
    allowances. Id.  This argument regarding the unreasonable

27  withholding of consent supports Centene's position that certain

28  conditions were excused, which is not barred by 29.1.

1  follow through with the necessary requirements because Centene

2  would not pay for it.  Id.  Accordingly, the Court cannot find

3  as a matter of law that this condition was or was not excused.

4       Finally, Grove Way argues that Centene failed to meet

5  condition 2.4(b) requiring Centene to submit certificates of the

6  insurance required under Section 11.1.  Pl.'s Opp'n at 7-8.  The

7  parties' statement of facts indicates a dispute over whether the

8  insurance certificates Centene sent met all the requirements of

9  Section 11.1.  See Def.'s SUF No. 69.  However, the parties do

10 not fully address in their briefing why the items sent do or do

11 not comply with the extensive list of requirements laid out in

12 11.1, which from its own review cannot readily be determined by

13 the Court.  See Pl.'s Opp'n at 7; Def.'s Mot. at 24-26; Def.'s

14 Reply at 9.  As such, the Court does not find either party has

15 met its burden of showing as a matter of law that this condition

16 has or has not been met.

17      D. *Conclusion*

18      For the foregoing reasons Grove Way's motion and Centene's

19 cross motion for partial summary judgment on Centene's breach of

20 contract counterclaim are DENIED. Centene's cross motion for

21 partial summary judgment on its counterclaim for declaratory

22 relief and Grove Way's first cause of action for declaratory

23 relief is also DENIED.

24           2.   Breach of Covenant of Good Faith and Fair Dealing

25      The covenant of good faith and fair dealing, implied by law

26 in every contract, exists to prevent one contracting party from

27 unfairly frustrating the other party's right to receive the

28 benefits of the agreement.  Gus v. Bechtel Nat. Inc., 8 P.3d

1   1089, 1110 (Cal. 2000).  If a claim does not go beyond the

2   statement of a mere contract breach, and relying on the same

3   alleged acts, simply seeks the same damages or other relief

4   claimed in a companion contract claim, it may be disregarded as

5   superfluous, as no additional claim is actually stated.  Careau

6   & Co. v. Sec. Pac. Bus. Credit, Inc., 272 Cal. Rptr. 387, 398

7   (Ct. App. 1990).

8        Grove Way seeks summary judgment on Centene's second

9   counterclaim for the breach of the implied covenant of good

10  faith and fair dealing, arguing that it fails to go beyond the

11  breach of contract claim.  Pl.'s Mot. at 20-22.  Specifically,

12  both counterclaims allege Grove Way breached by attempting to

13  force Centene to pay for a substantially upgraded security

14  system, unreasonably delaying and withholding approval of their

15  construction plans and refusing to pay the allowances due.  See

16  Answer and Countercl. ¶¶ 22-36.  However, as Centene's motion

17  clarifies, their breach of contract claim is based on Grove

18  Way's failure to pay the allowances.  See Def.'s Mot. at 29.

19  The other facts alleged regarding the security system and

20  withholding of approvals, support Centene's position that

21  certain performance obligations of theirs were excused.  See id.

22  at 18-30.  In addition, Centene claims Grove Way's insistence on

23  payment for a security system and unreasonable approval delays

24  amounted to a breach of the covenant of good faith and fair

25  dealing by unfairly frustrating their right to receive

26  allowances.  See Def.'s Mot. at 31.  Because Centene's breach of

27  the implied covenant of good faith and fair dealing rests on

28  different conduct of Grove Way's, not claimed to be a violation

14

1  of an explicit term of the lease, the Court finds that this

2  counterclaim is not superfluous as a matter of law.  See

3  Digerati Holdings, LLC v. Young Money Entertainment, LLC, 123

4  Cal. Rptr. 3d 736, 745 (Ct. App. 2011)(noting the gravamen of

5  the two claims rests on different facts and different harm); see

6  also CACI No. 325 (noting the harm alleged in a breach of the

7  implied covenant of good faith and fair dealing may produce

8  contract damages that are different from those claimed for

9  breach of the express contract provisions).

10       Grove Way also argues that to the extent Centene's claim

11  rests on Grove Way's conduct regarding the security cameras, it

12  fails because Centene agreed to pay them.  Pl.'s Mot at 21-22.

13  But Grove Way cites no authority that this would preclude

14  Centene from bringing a claim that Grove Way placing

15  unreasonable conditions on approval violated the implied

16  covenant of good faith and fair dealing.  Id.  Further, it is in

17  dispute what type of security system Centene agreed to pay for.

18  See Pl.'s SUF No. 58.  Centene's claim is that it was in bad

19  faith for Grove Way to condition its approval of the revised

20  plans on Centene paying for a substantially more expensive

21  system than it had removed and previously agreed to replace.

22  See Def.'s Mot. at 31-32.

23       For these reasons Grove Way's motion for partial summary

24  judgment on Centene's second counterclaim for breach of the

25  implied covenant of good faith and fair dealing is DENIED.

26            3.   Quantum Meruit/Unjust Enrichment

27       A quantum meruit or quasi-contractual recovery rests upon

28  the equitable theory that a contract to pay for services is

1   implied by law for reasons of justice.  Hedging Concepts, Inc.

2   v. First Alliance Mortgage Co., 41 Cal. App. 4th 1410, 1419

3   (1996).  However, it is well settled that there is no equitable

4   basis for an implied-in-law promise to pay reasonable value when

5   the parties have an actual agreement covering compensation.

6   Id.; see also Durell v. Sharp Healthcare, 183 Cal. App. 4th

7   1350, 1370 (2010)("As a matter of law, an unjust enrichment

8   claim does not lie where the parties have an enforceable express

9   contract.")

10      Here, there is a valid, enforceable contract, making the

11   quantum meruit/unjust enrichment claim inapplicable.  See id.

12   For this reason, Grove Way's motion for partial summary judgment

13   on Centene's quantum meruit/unjust enrichment counterclaim is

14   GRANTED and Centene's cross motion for partial summary judgment

15   on this counterclaim is DENIED.

16            4.   Accounting

17     "An accounting is an equitable proceeding which is proper when

18   there is an unliquidated and unascertained amount owing that

19   cannot be determined without an examination of the debts and

20   credits on the books to determine what is due and owing."

21   Prakashpalan v. Engstrom, Lipscomb & Lack, 167 Cal. Rptr. 3d

22   832, 859 (Ct. App. 2014).

23      Centene's sixth counterclaim is for accounting.  Answer and

24   Countercl. ¶¶ 54-59.  Centene contends this claim is necessary

25   to ascertain the amounts due and owing under the Lease, as Grove

26   Way in its breach of contract claim asserts that Centene is past

27   due on rent.  Def.'s Mot. at 33; Compl. ¶ 28.  Centene claims it

28   does not owe rent and that Grove Way has misappropriated

1  Centene's rent payments to disputed amounts.  Def.'s Mot. at 33.

2  Accordingly, an accounting is valid and necessary to determine

3  what has been paid to Grove Way, where this money has been

4  allocated and what if anything is currently due under the Lease.

5  For these reasons Plaintiff's motion for partial summary

6  judgment on Defendant's accounting counterclaim is DENIED.

7                          III.   ORDER

8       For the reasons set forth above:

9        (1)   Plaintiff's motion for summary judgment on Defendant's

10             first, second and sixth counterclaim is DENIED.

11       (2)   Plaintiff's motion for summary judgment on Defendant's

12             fourth counterclaim is GRANTED.

13       (3)   Defendant's motion for summary judgment on its first,

14             fourth and fifth counterclaims is DENIED.

15       (4)   Defendant's motion for summary judgment on Plaintiff's

16             first cause of action is DENIED.

17       (5)   Pursuant to Federal Rule of Civil Procedure 56(g) any

18             fact not genuinely in dispute is deemed established in

19             the case.

20       IT IS SO ORDERED.

21

Dated: December 28, 2020

22

23                              _____
                                JOHN A. MENDEZ,
24                              UNITED STATES DISTRICT JUDGE

25

26

27

28
                                17